Hummel *v.* Hummel, Appellant.

Argued October 21, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*George H. Detweiler,* for appellant.

*William Brown, Jr.,* for appellee.

OPINION BY KELLER, J., January 29, 1930:

The master recommended that a divorce be granted the libellant on the ground of indignities to her person rendering her condition intolerable and her life burdensome. The court below adopted the findings of fact and conclusions of law of the master and entered a decree of divorce.

The parties were married in 1892. They separated in 1912. The course of conduct of which the libellant complains began in 1907 and culminated in a drunken frenzy or *mania a potu* in consequence of which she told respondent the next day that she would no longer live with him and ordered him to leave the house, which belonged to her.

The stories of the libellant and respondent are, in some respects, in sharp conflict. If her story is believed a case was made out justifying the decree; if his is accepted the cause of divorce was not established with that degree of certainty that the law requires. Her evidence is corroborated by that of their daughter and, in a slight degree, by their son-in-law. The witnesses testifying on his behalf gave evidence chiefly as to his conduct before 1907 (Mrs. Margaret Hummel) or since 1912 (Charles C. Sawyer).

No good would be subserved by reciting the evidence in detail. Each case must depend on its own particular facts and on the credibility which the court attaches to the several witnesses.

The principal grounds of indignity testified to by the libellant and her daughter were his coming home frequently at night in a drunken and quarrelsome condition or so intoxicated that he could not walk upstairs; his cursing the libellant and using vile epithets about her; his insulting language, audible to the second story, whenever there were callers in the house; his continual quarreling about the money she spent and the poor food that she got with it; and his frequent threats to do her and their daughter bodily harm.

The libellant said he came home in a drunken condition twice a week. In his answer he denied that he was ever under the influence of liquor; but on cross-examination he admitted that he did go home under the influence of liquor "about once in two weeks, or once a week, something like that," and "occasionally" did get into a drunken sleep or stupor. His account of the circumstances of his urinating on the floor of their bedroom differed greatly from hers; hers seems the more probable. He admitted using some profanity but denied calling his wife a "bitch;" said he might have called her a "son of a bitch," as he did use that term. Both parties agreed that there were frequent bickerings about money; he could not understand what she did with the ten or twelve dollars a week that he gave her; wanted an itemized account of it down to a bottle of milk; and yet was not satisfied with the quality of food that she bought. His objections to callers seemed to be the cost of the gas burnt to illuminate the hall while they were there. His answer to many of the charges of his wife and daughter were "not that I remember," or "I don't remember." It was testified that on one occasion not long before the row immediately preceding the break-up of relations, the libellant and her daughter had to spend the night away from home because of fear of him; and on the occasion of the marriage of libellant's daughter by a former hus-

band he not only refused to attend the wedding but doublelocked the front door so that his wife and daughter could not get in; his reason for so doing, that he gave on the hearing, being that he wanted to know when they came in. The chief argument of appellant's counsel seems to be that the libellant's testimony as to her husband's drinking must be regarded as improbable in view of his continuous employment as a motorman by the Philadelphia Rapid Transit Co. for over thirty years, and the testimony of Sawyer, who was employed as manager's clerk by the transit company, as to his good habits while on duty; but in the face of the respondent's own admissions we are not impressed by the argument. His drinking must have been done after duty hours and his habits may have improved in the seventeen years that have elapsed since his wife ordered him to leave.

After full consideration of the testimony a majority of the court are of opinion that the libellant's evidence is worthy of belief and establishes her right to a divorce.

The assignments of error are overruled and the decree is affirmed at the costs of the appellant.