Steinman *v.* Steinman, Appellant.

Argued November 12, 1940.

Before CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Harold G. Ripple,* for appellant.

*John Milton Ranck,* for appellee.

OPINION BY CUNNINGHAM, J., March 12, 1941:

Emma M. Steinman filed her libel January 26, 1939, seeking an absolute divorce from her husband, Jacob

H. Steinman, upon the grounds of cruel and barbarous treatment and indignities to her person. The testimony was taken before a master who filed a report recommending a decree of absolute divorce upon the ground of indignities alone. He also requested the allowance of an additional master's fee of $75, to be taxed against the respondent as costs. Exceptions filed to the master's report by the parties were dismissed by SCHAEFFER, P. J., except as to the additional master's fee of $75, which was ordered to be paid by libellant. The order of the court entered May 24, 1940, concludes: "Upon payment of the costs as aforesaid, duly certified by the Prothonotary of Lancaster County, the court will, upon motion, enter a decree of divorce ...... on the ground of indignities." The present appeal is from that order.

No question is raised by counsel on either side with relation to the form of the order, but it must be noted that a final and, therefore, appealable decree had not been entered when the appeal to this court was taken on June 4, 1940. We shall dispose of the case upon its merits, but are not to be understood as approving the practice adopted below. Libellant has not appealed and the disposition by the court below of the additional master's fee is not before us.

The unusual and somewhat tragic feature of this case is that a court has been called upon by a wife sixty-three years of age to dissolve a marriage which has been in existence for forty-five years by granting her a divorce from a husband sixty-five years old and to whom she has borne nine children, seven of whom are still living.

Our examination of the testimony has, however, led us to the independent conclusion that libellant is entitled to the decree she seeks because she has been subjected by her husband to a measurably continuous course of unprovoked indignities to her person which rendered her condition intolerable and life burdensome,

and justified her withdrawal from the common habitation. The testimony by and on behalf of libellant brings this case within the rule announced in *Esenwein v. Esenwein*, 312 Pa. 77, 167 A. 350, and many cases in this court.

The parties were married in the city of Lancaster on May 24, 1894, and lived successively at New Providence, Paradise Township and Strasburg Borough, all in Lancaster County. On January 23, 1939, three days before her libel was filed, the libellant left their domicile and did not thereafter return. Respondent was a stone mason as well as a farmer and seems to have been reasonably industrious. Libellant, under all the evidence, was not only a good wife and mother, but also habitually engaged in unusually hard manual labor. In addition to performing her household duties she raised chickens and farmed tobacco; although this is usual among women residing in the district, her son Joseph testified it was not customary for a woman "to go out alone, and work with horses," or to farm tobacco on another's property as libellant did.

During the first twenty-five years of their married life nothing extraordinary seems to have occurred. The course of indignities complained of began in 1920. Some of them were so gross and brutal as to seem almost incredible upon any theory other than that respondent was intoxicated to such an extent that he was incapable of realizing their enormity. No useful purpose would be served by reciting them in detail. They are set forth in chronological order in the master's report (Record, pages 175a-181a), and in the opinion of the court below. Our examination of the record discloses that the findings of fact by the master are amply supported by competent evidence and that libellant's testimony is corroborated in many instances.

It is sufficient for present purposes to note that respondent when drunk called libellant vile names; repeatedly, and without the slightest reason, accused

her of immoral conduct; committed physical assaults upon her, requiring the interference of their children for her protection; and frequently threatened her life. The culmination of this course of conduct came on January 23, 1939. That evening respondent came home drunk; libellant called him for supper several times. Finally he got up, staggered toward the table and slipped. Libellant exclaimed "wope," and respondent said, "You go to hell, you son-of-a-bitch, you are no account to me anyhow. Always whoring around with preachers and bulling around every night."

In assigning this outrageous insult as the immediate cause for leaving, libellant testified: "I just found that I couldn't take it any more. I had just taken so much off of him that I just couldn't take it any more ...... I just went to pieces. That was the last." Her plight was thus portrayed in the testimony of her son, Joseph: "Q. And in your opinion would it have been possible for your mother to have continued to live with your father after January, 1939? A. It wouldn't have been possible. Q. Was that due to these continued drunken sprees he went on? A. Well, I wouldn't say all on that. Mother was operated on for mastoids a few years back, and her nerves hasn't been so good. And when there was no one there to help her when he came home, what was she to do? Sit there and take it?"

Respondent's denials of libellant's testimony were evasive and unconvincing, probably due to a lack of any accurate recollection of his conduct and language while intoxicated. The master had the advantage of seeing and hearing the witnesses. His report, while advisory and not controlling (*Golden v. Golden*, 134 Pa. Superior Ct. 211, 3 A. 2d 941), is illuminating upon the subjects of credibility and the underlying explanation of the abuse to which libellant has been subjected. Excerpts from his report read:

"Respondent was interrogated in detail as regards each and every incident alleged by libellant. He an-

swers by saying an untruth or a lie or some such brief denial. He has no explanation or version to offer......

"It is conceded that all of the abuse and mistreatment occurred when respondent was either drunk or had been drinking ...... It is admitted that when sober respondent was a quiet, mild-mannered man. He gave every evidence thereof at the times of the hearings before the master. In submitting his testimony, respondent was giving it truthfully as he remembered it, and the master does not wish to accuse respondent of any deliberate attempt at falsehood."

The extent to which respondent indulged in the excessive use of liquor was thus described in the testimony. Libellant said: "Well, he had just been getting drunk continually, and continually abusing me, and calling me all kinds of names. Q. Did the drunkenness increase as the years passed? A. Yes, it increased. It seemed in the winter time, when he didn't have much work he was so much worse than in the summer time." She added that he got drunk "very, very often" while they lived in Strasburg and that the week before she left him "he was drunk nearly every day." Clarence Eisenberger, a neighbor for sixteen years called by libellant, testified: "Q. During the period of time, Mr. Eisenberger, that you knew Jake, how often would you say you had seen him drunk? A. Well, on an average of once a week, anyhow."

The following paragraph from the opinion of this court in *Cassler v. Cassler*, 95 Pa. Superior Ct. 445, 449, is equally applicable here: "A study of the record convinces us that the cause of the differences between the parties was the conduct of [respondent] during his prolonged drunken sprees—conduct of which he was apparently not conscious after he became sober and of which he would not have been guilty while sober." While gross intoxication may explain, it in no way excuses, respondent's conduct: *Hummel v. Hummel*, 98 Pa. Superior Ct. 1.

Our conclusion upon the whole record is that libellant, through no fault upon her part, has for many years been subjected to inexcusable indignities to her person which have at last rendered her condition intolerable and life burdensome and, therefore, entitle her to an absolute divorce from respondent.

Decree affirmed at costs of appellant.